# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REBECCA L. AKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-937-R |
| | ) |
| CENTRAL UNITED LIFE | ) |
| INSURANCE COMPANY | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before this Court is Defendant Central United Life Insurance Company's ("Defendant" or "Central United") Motion for Summary Judgment, Doc. 53. Plaintiff has responded, Doc. 57; Defendant has replied, Doc. 62; and the matter is fully briefed and at issue. For the reasons stated herein, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

## I. Background

The following facts are undisputed.[1] Plaintiff purchased a Cancer Treatment Benefits Policy ("Policy") from Defendant with an effective date of July 15, 1997. Doc.

---

[1] "The brief in opposition to a motion for summary judgment . . . shall begin with a section responding, *by correspondingly numbered paragraph*, to the facts that the movant contends are not in dispute and shall state any fact that is disputed." LCvR56.1(c) (emphasis original). "All material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule." LCvR56.1(e); *see also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may: . . . (2) consider the fact undisputed for purposes of the motion . . . ."). Plaintiff sets out a "Statement of Material Facts in Dispute" at the front of her Response brief, and she specifically disputes Defendant's Undisputed Fact Nos. 4–6, 13, 15–16, and 20–21. *See* Doc. 57, at 1–3. Plaintiff's briefing, as well, selectively responds to Defendant's Motion for Summary Judgment,

53, at 3; Doc. 53-1. In addition to covering Plaintiff, the Policy also covered her spouse, Larry Ake, through its "family coverage" provisions. Doc. 53, at 3. Mr. Ake was diagnosed with prostate cancer in late 2010. *Id.* at 4. During Mr. Ake's treatment for cancer, Defendant paid over $100,000 in benefits per the Policy's terms. *Id.* at 6. Mr. Ake died on March 5, 2016, and Plaintiff brought suit in November of that year,[2] asserting causes of action for breach of contract and breach of Defendant's duty of good faith and fair dealing (otherwise known as the tort of "bad faith") relating to claims Defendant denied over the course of Mr. Ake's treatment. *See* Am. Compl., Doc. 28; Doc. 53, at 4–5; Doc. 57. Specifically, Plaintiff made claims for her husband's treatment with Provenge, an immunotherapy, and treatment relating to blood platelets. Doc. 53, at 4; Doc. 57; Doc. 62, at 4 n. 3. Defendant denied both claims as outside the Policy's coverage. Doc. 53.

Defendant argues that the Policy was "a limited-benefit policy" whose coverage was restricted to its specific terms. *See id.* at 3. As related to the denied claims, the Policy covered "actual charges for cancericidal chemical substances" and "actual charges made for blood and blood plasma." Doc. 53, at 3–5 (emphasis omitted). Defendant maintains that this Policy language does not encompass the immunotherapy and platelet treatments for which Plaintiff seeks reimbursement. *Id.* Moreover, Defendant argues that (1) Plaintiff's bad faith cause of action relating to Mr. Ake's Provenge treatment is time-barred; (2) all of Plaintiff's bad faith causes of action are unavailing because the parties have a "legitimate

---

and Plaintiff seemingly concedes several of Defendant's undisputed facts. Accordingly, pursuant to Federal and local rules, the Court treats as undisputed those facts to which Plaintiff fails to respond.
[2] Defendant timely removed the suit from Oklahoma County district court to this Court on August 31, 2017, after dismissal of a non-diverse defendant established diversity jurisdiction. *See* Doc. 1.

dispute" over the Policy's coverage; and (3) Plaintiff's maximum contract damages for Provenge treatments in 2013 are $18,986.64, pursuant to an amendment Plaintiff signed after the Policy issued. *Id*. at 7–11; Doc. 53-9.

Plaintiff disagrees. According to her Response brief, she "did not know [the Policy] was a limited benefits policy" and relied on marketing materials and sales agent representations in concluding that the Policy covered all bills in full. *See* Doc. 57, at 1–3. Based on these representations, Plaintiff asserts that the Policy in fact covers the immunotherapy and platelet treatments at issue, and that Defendant in bad faith denied these claims. *Id*. at 8–9. As well, Plaintiff argues that her causes of action are not time-barred because she "discovered" them well after the claims were denied, thereby tolling the statute of limitations. *Id*. at 6–7. Finally, Plaintiff challenges Defendant's maximum contract damages figure; while she seems to acknowledge that Defendant's 2013 calculations are correct, she asserts that she is also owed payments for 2016 and the years prior to 2013, in addition to any remaining benefits for 2013. *See id*. at 10–11.

## II. <u>Motion for Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of

making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)). In short, the Court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

While the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party, *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712–13 (10th Cir. 2014), "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### III. <u>Analysis</u>[3]

Defendant moves for summary judgment on Plaintiff's breach of contract and bad faith theories pertaining to two claims denials: (1) Defendant's 2013 denial of Plaintiff's

---

[3] In a diversity suit, such as this one, Oklahoma law applies. *See Eden v. Neth. Ins. Co.*, 834 F.3d 1116, 1120 (10th Cir. 2016).

4

Provenge claim and (2) Defendant's denial of Plaintiff's platelet therapy claims. The Court address each issue in turn.

    (A)    <u>*Bad Faith: Provenge Claim*</u>

Defendant argues that Plaintiff's bad faith cause of action relating to Mr. Ake's Provenge treatment is time-barred under the applicable two-year statute of limitations, 12 O.S. § 95(3).[4] Doc. 53, at 7–8. Plaintiff does not seem to contest this statute's applicability, Doc. 57, at 6–7, and Oklahoma case law establishes that this statute covers the tort of bad faith. *See Lewis v. Farmers Ins. Co.*, 1983 OK 100, ¶ 7, 681 P.2d 67, 70; *see also Zewdie v. Safeco Ins. Co. of Am.*, 304 F. Supp. 3d 1101, 1111 (W.D. Okla. 2018). Therefore, the operative question is, "when did Plaintiff's bad faith cause of action accrue?"

Under Oklahoma law, a "statute of limitations 'begins to run when the cause of action accrues' and '[a] cause of action accrues when a litigant could first maintain an action to a successful conclusion.'" *Zewdie*, 304 F. Supp. 3d at 1112 (alterations original) (quoting *Stephens v. Gen. Motors Corp.*, 905 P.2d 797, 799 (Okla. 1995)). Mr. Ake's Provenge treatment took place in February and March of 2013. *See* Doc. 53, at 4; Doc. 53-2, at 9. Plaintiff made a claim for this treatment on March 27, 2013, and Defendant denied the claim, asserting that it fell outside the Policy's coverage. *See* Doc. 53, at 4; Doc. 53-5. Plaintiff, in her deposition, states that she was aware of Defendant's denial by May 6, 2013. Doc. 53-2, at 10. Plaintiff subsequently sent a Request for Assistance to the Oklahoma Insurance Department on June 14, 2013, but the Department replied on July 19, 2013,

---

[4] For Oklahoma statutes, the Court employs Oklahoma state court, rather than Bluebook, formatting.

finding no wrongdoing in Defendant's denial of the claim. Doc. 53-7–53-8. Based on this timeline, Plaintiff's bad faith tort likely accrued on May 6, 2013—the date Defendant denied the claim—but, regardless, the tort accrued no later than July 19, 2013, when the Oklahoma Insurance Department made its determination regarding Defendant's denial.

Plaintiff, however, proposes another accrual period—the months following March 2016, when Plaintiff alleges that a representative of Defendant advised Plaintiff to seek legal advice. *See* Doc. 57, at 3, 7; *see also* Doc. 57-10–57-12. Plaintiff asserts this is a straightforward application of the "discovery rule," which "provides that 'the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury.'" *Blue v. Universal Underwriters Life Ins. Co.*, 612 F. Supp. 2d 1201, 1203 (N.D. Okla. 2009) (quoting *Samuel Roberts Noble Found., Inc. v. Vick*, 840 P.2d 619, 624 (Okla. 1992)). Because she "did not know her rights until she . . . sought advice of counsel," Plaintiff argues that the discovery rule tolled the statute of limitations until this fateful legal meeting. *See* Doc. 57, at 7.

Quite simply, this is not how the discovery rule works. Such a rule as imagined by Plaintiff would vitiate the concept of statutes of limitations altogether. If these statutes did not run until potential plaintiffs were informed by lawyers that they may have a lawsuit on their hands, then causes of action would seldom, if ever, be time-barred, rendering limitations periods virtually superfluous. Ironically, Plaintiff's primary authority for this argument, *Blue v. Universal Underwriters Life Insurance Co.*, reveals the argument's lack of merit. In *Blue*, the insured filed a claim for disability coverage with her insurer, on May 7, 2003. 612 F. Supp. 2d at 1202. The insurer denied the claim on December 31, 2003, but

6

the insured did not sue for bad faith and breach of contract until June 26, 2008. *Id*. The court found that the insured's bad faith tort was time-barred under 12 O.S. § 95(3), as she had failed to sue within two years of the tort's accrual date: December 31, 2003, the date the insurer denied the claim. *Id*. at 1203.

The court *also* rejected the insured's discovery rule argument, similar to the one offered here by Plaintiff. The court recognized that the "statute of limitations is not tolled simply because a plaintiff 'negligently refrain[s] from prosecuting inquiries plainly suggested by the facts.'" *Id*. (alteration original) (quoting *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947, 951 (Okla. 1984)). Plaintiffs are "charged with having knowledge of those facts which ought to have been discoverable in the exercise of reasonable diligence." *Id*. at 1203–04. Thus, it is "irrelevant whether the plaintiff understood that the defendant's actions constituted a legal cause of action as long as the plaintiff knew of the facts which could give rise to such a claim." *Id*. at 1204 (internal quotation marks and alterations omitted) (citing *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1217 (10th Cir. 2000)); *cf. Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 676–77 (10th Cir. 2005).

Plaintiff had all the facts she needed to pursue her bad faith tort regarding Mr. Ake's Provenge treatment by May 6, 2013. At the latest, Plaintiff's cause of action accrued when the Oklahoma Insurance Department responded to her Request for Assistance on July 19, 2013. Yet Plaintiff first filed this suit (in state court) on November 2, 2016—over three years after the latest possible accrual date. Thus, Plaintiff's bad faith tort regarding Defendant's denial of the Provenge claim is time-barred, and this Court GRANTS summary judgment to Defendant on this issue.

(B) *Breach of Contract: Provenge Claim*

Plaintiff also asserts a breach of contract cause of action regarding Defendant's denial of the Provenge claim. Specifically, she claims that her husband's Provenge treatment was covered under Part I(F) of the Policy, which provides benefits for "X-ray Therapy, Radium Therapy, Radiation Therapy and Chemotherapy," including "cancericidal chemical substances and the administration thereof for the purpose of modification or destruction of tissue invaded by cancer." Doc. 53-1, at 7; *see also* Doc. 57, at 8–10. Defendant argues that this Policy language is unambiguous: because this paragraph does not explicitly list "immunotherapy," such as Provenge, Plaintiff cannot allege that she was entitled to benefits for such treatment. *See* Doc. 53, at 8–10. Moreover, the Policy "does not provide a benefit for any loss or expense resulting from any other disease, sickness, side effect or incapacity other than cancer or any treatment thereof as *specifically defined* herein." Doc. 53-1, at 6 (emphasis added). Based on this, Defendant asserts that Provenge simply falls outside the clear terms of the Policy.

Plaintiff argues that the language sweeps more broadly than Defendant's reading because of (1) the language's ambiguity and (2) Defendant's marketing materials and representations made by Defendant's agent. Doc. 57, at 8–10. That is, Plaintiff seeks to rely on Oklahoma's "reasonable expectations" doctrine in construing the Policy. Under Oklahoma law, the reasonable expectations doctrine "appl[ies] to the construction of ambiguous insurance contracts or to contracts containing exclusions which are masked by technical or obscure language . . . ." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*,

1996 OK 28, ¶ 2, 912 P.2d 861, 863.[5] As insurance contracts are contracts of adhesion, ambiguities in these contracts are "to be construed strictly against the insurer and in favor of the insured." *Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, ¶ 5, 73 P.3d 865, 868. Thus, under the reasonable expectations doctrine, "if the insurer or its agent creates a reasonable expectation of coverage in the insured which is not supported by policy language, the expectation will prevail over the language of the policy." *Max True Plastering Co.*, 1996 OK 28, ¶ 8, 912 P.2d at 864; *see also Spears*, 2003 OK 66, ¶ 6, 73 P.3d at 868 ("Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean.").

The Court finds the relevant Policy language ambiguous. Accordingly, it must be interpreted most favorably to the insured and construed strictly against the insurer. Plaintiff asserts that she understood the Policy to include immunotherapy treatments such as Provenge based on the representations of Defendant's agent. Doc. 57, at 1–2, 8–10. Plaintiff attaches to her Response brief marketing material used by Defendant's agent, which indicates that the series to which the Policy belongs (Cancer Fund Plus Policy Form Series CP-1004-OK) "PAYS for . . . immunotherapy" and "experimental drug[] treatment."

---

[5] "A policy term is ambiguous under the reasonable expectations doctrine if it is reasonably susceptible to more than one meaning." *Max True Plastering Co.*, 1996 OK 28, ¶ 19, 912 P.2d at 869; *see also Lucas v. Tex. Int'l Life Ins. Co.*, No. CIV–11–163–FHS, 2012 WL 2327805, at *2 (E.D. Okla. June 19, 2012) ("If the meaning of the contract terms are uncertain, or the terms can bear more than one reasonable interpretation, the terms are deemed ambiguous and must be interpreted most favorably to the insured and against the insurance carrier." (citing *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376–77 (Okla. 1991)).

*See* Doc. 57, at 1–2; Doc. 57-1–57-2. As to the language, Defendant's own witness, Sarah Bottomley, whose deposition excerpts are attached to and cited in Defendant's Reply brief, speaks to the Policy's ambiguity: when asked whether "some immunotherapy drugs can be cancericidal," she answers, "Correct but not all of them." *See* Doc. 62, at 4; Doc. 62-1, at 2.[6] Reading this ambiguous language in conjunction with the representations made to Plaintiff by Defendant's agent, a reasonable person in Plaintiff's position could have understood that Provenge was covered by the Policy as a cancericidal chemical substance. "[I]f an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctively reveals its stated purpose." *Spears*, 2003 OK 66, ¶ 7, 73 P.3d at 868. The Policy's language fails to clearly and distinctively limit coverage as it relates to Provenge and other immunotherapies. Thus, pursuant to the reasonable expectations doctrine, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's breach of contract cause of action.[7]

---

[6] Granted, Ms. Bottomley goes on to testify that, in her reading of relevant FDA releases, Provenge neither modifies nor destroys tissues. Doc. 62-1, at 3. But the pertinent language itself, particularly "cancericidal chemical substances," appears to cover at least some immunotherapies. *See id*. at 2. Thus, from the standpoint of a reasonable person in Plaintiff's position—in light of the representations and materials offered by Defendant's agent, which referred to immunotherapy being covered—the Policy could have created a reasonable expectation that Provenge was covered.

[7] An Eastern District of Oklahoma case is instructive here. In *Lucas v. Texas International Life Insurance Co.*, the district court assessed whether policy language similar to the language at issue covered drugs taken incident to chemotherapy. 2012 WL 2327805, at *1–2. The policy provision covered "the actual charges for cancericidal chemical substances and their administration for the purpose of modifications or destruction of abnormal tissue . . . ."; the insured had submitted claims for drugs administered during chemotherapy, but the insurer denied them as outside the policy's coverage. *Id*. at *2–3 (internal quotation marks omitted). The court found the phrase "cancericidal chemical substances" ambiguous and, therefore, construed it to cover the drugs in question, even though they were not explicitly chemotherapy. *Id*. Likewise, the Court finds the relevant (and nearly identical) Policy language here ambiguous, such that immunotherapy could fall within its coverage when read by a reasonable person in Plaintiff's position.

However, the Court GRANTS Defendant's Motion as to the maximum contract damages available for 2013 for Provenge-related claims. Defendant notes that Plaintiff signed an endorsement on May 3, 2002, that amended subsection (F) of Part I of the Policy, which covers "cancericidal chemical substances," such that the subsection's benefits "would be limited to 50% of the actual charges up to a maximum aggregate benefit of $50,000 per calendar year." Doc. 53, at 5; Doc. 53-9 (amendment signed by Plaintiff). Under this amended Policy, Defendant paid out the $50,000 benefits maximum in 2014 and 2015, and it paid $31,013.36 in benefits in 2013. Doc. 53, at 6. Therefore, "the maximum contractual damages Plaintiff could recover under her breach of contract theory . . . is $18,986.64." *Id.* at 11. Plaintiff does not seem to dispute this: she does not contest Defendant's Undisputed Facts 22–26[8] and notes that $18,986.64 "may be the amount for 2013." Doc. 57, at 1–3, 10. Thus, in light of the amendment Plaintiff signed, the Court GRANTS summary judgment to Defendant on the issue of potential contract damages for 2013.[9]

---

[8] *See supra* note 1.

[9] The Court notes that the Policy amendment modifies only subsection (F) of Part I of the Policy, covering (among other things) "cancericidal chemical substances." *See* Doc. 53-9. Both parties seem to agree that claims related to Mr. Ake's Provenge treatment were the only denied claims from 2013 pertinent to this litigation—and, at any rate, neither party has submitted evidence to the contrary. Thus, the Court's grant of summary judgment as to the maximum contract damages available for 2013 pertains *only* to the maximum recoverable for claims falling within subsection (F)'s ambit. If, for instance, Plaintiff also cited to platelet-related claims denied in 2013 (which she does not), the Court could not grant summary judgment as to the maximum damages recoverable for these hypothetical claims under a breach of contract theory because the Policy amendment did not modify the "blood" benefits subsection of Part I. The Court lays out these observations merely because Defendant's briefing is sometimes specific and sometimes quite general about its summary judgment request regarding 2013 contract damages. *See generally* Docs. 53, 62. Lest there be confusion, the Court further specifies the scope of its summary judgment grant as to this issue here.

(C) *Platelets Claims: Bad Faith and Breach of Contract*

Defendant also moves for summary judgment on Plaintiff's causes of action relating to Mr. Ake's blood platelet treatment. Under subsection (G) of Part I of the Policy, "the actual charges made for blood and blood plasma" are covered. Doc. 53-1, at 8. Defendant argues that this language excludes platelet-related therapies. Doc. 53, at 8. Moreover, as to Plaintiff's bad faith tort, Defendant reasserts the Policy's lack of coverage, but also argues that, even if the Policy covers these platelet-related therapies, no bad faith tort lies because Defendant denied benefits based on a "legitimate dispute" over coverage. *Id*. at 9–10.

The briefing is unclear as to whether there is one denied claim for platelet-related therapies or multiple denied claims; as well, it is unclear whether there were claims denied over several years or only for one year.[10] Plaintiff submits billing and other documentation, which seem to indicate denied claims in late 2015 and early 2016. *See* Doc. 57-14. Defendant, more generally, moves for summary judgment on *any* potential platelet-related claims, arguing that the Policy simply does not cover such treatment. Doc. 3, at 8–10.

The Court finds that Plaintiff may pursue a breach of contract theory regarding Mr. Ake's platelet-related treatments under the same "reasonable expectations" doctrine addressed above. If "cancericidal chemical substances" is ambiguous enough to create a reasonable expectation of coverage for immunotherapies, then certainly a term as open-ended as "blood" can encompass platelets, one of blood's component parts. A reasonable person situated as Plaintiff was could have expected the Policy's "blood and blood plasma"

---

[10] Indeed, the briefing is unclear as to what these platelet-related claims are or relate to in the first place.

benefits provision to cover treatments relating to Mr. Ake's blood platelets. *See Lucas v. Tex. Int'l Life Ins. Co.*, No. CIV–11–163–FHS, 2012 WL 2327805, at *4 (E.D. Okla. June 19, 2012) (finding policy language covering "the actual charges for blood, packed red cells, whole blood, plasma, platelets and leucocytes" sufficiently ambiguous that "[a] reasonable person would assume that coverage for blood would include[] full coverage of blood products [and] fees associated with storage, delivery, processing and . . . the transfusion itself."). Thus, Defendant *is not* entitled to summary judgment on Plaintiff's breach of contract cause of action.

However, Defendant *is* entitled to summary judgment on Plaintiff's bad faith theory relating to these platelet claims. To state a *prima facie* case of bad faith, Plaintiff must show (1) "coverage under the insurance policy and that the insurer was required to take reasonable actions"; (2) "the actions of the insurer were unreasonable under the circumstances"; (3) "the insurer failed to deal fairly and act in good faith toward the insured in its handling of the claim"; and (4) "breach or violation of the duty of good faith and fair dealing was the direct cause of any damages that the insured sustained." *Harris v. Progressive Direct Ins. Co.*, --- F. App'x ---, 2018 WL 3217191, at *6 (10th Cir. 2018) (citing *Badillo v. Mid Century Ins. Co*, 121 P.3d 1080, 1093 (Okla. 2005)). "[T]ort liability arises only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1249 (10th Cir. 2010) (internal quotation marks and citations omitted). "An insurer does not act unreasonably when it withholds payment based on a 'legitimate dispute' regarding coverage." *Id*. (citing *Skinner v. John Deere Ins. Co.*, 998 P.2d 1219,

13

1223 (Okla. 2000)); *Barre v. State Farm Fire & Cas. Co.*, 982 F. Supp. 2d 1267, 1274 (N.D. Okla. 2013) ("The Oklahoma Supreme Court and the Tenth Circuit have made clear that an insurer does not subject itself to a claim of bad faith merely by disputing coverage."); *see also Harris*, 2018 WL 3217191, at *7 ("[A] bad faith 'cause of action will not lie where there is a legitimate dispute.'" (quoting *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984)); *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) ("The insurer will not be liable for the tort of bad faith if it 'had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy.'" (quoting *McCoy v. Okla. Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992)); *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989) ("The insurer does not breach this duty by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.' Rather, to prove a breach of the duty of good faith and fair dealing the insured must show by a preponderance of the evidence that the insurer failed to treat the insured fairly or that it tried to make the insured 'surrender his policy or disadvantageously settle a nonexistent dispute.'" (citations omitted)); *Caughton v. Liberty Mut. Fire Ins. Co.*, No. 11-CV-206-GKF-TLW, 2014 WL 11531560, at *11–12 (N.D. Okla. Mar. 6, 2014) ("Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law, and the insurer is entitled to summary judgment. . . . A decision to withhold . . . payment, if based on a

legitimate dispute or reasonable justification (legal or factual) cannot form the basis of bad faith tort liability." (internal quotation marks and citations omitted)).[11]

Considering the ambiguity of "blood" in the Policy, the Court finds Defendant's denials of any platelet-therapy claims to be, at minimum, not unreasonable and based on a "legitimate dispute" over the scope of the Policy. *Cf. Edens v. Neth. Ins. Co.*, 834 F.3d 1116, 1121 (10th Cir. 2016) ("'The reasonable expectation doctrine is a double-edged

---

[11] The Plaintiff's citation to *Tomlinson v. Combined Underwriters Life Ins. Co.*, 708 F. Supp. 2d 1284 (N.D. Okla. 2010) merits comment. *Tomlinson*'s facts are similar to those in the instant suit: an insurer denied an insured's claims for certain drugs and surgeries related to cancer treatment as outside the scope of the Policy. 708 F. Supp. 2d at 1286–89. Analyzing the insured's breach of contract theories, the district court determined that the relevant policy language, as here, was ambiguous, and it construed the language in the insured's favor pursuant to the reasonable expectations doctrine. *Id.* at 1290–93. As to the insured's bad faith tort, the court suggested that Oklahoma law is unsettled on whether the existence of a "legitimate dispute" over coverage is a full-fledged defense to bad faith or something more akin to a consideration in assessing the viability of a bad faith theory. *See id.* at 1294–95 (citing Oklahoma and Tenth Circuit cases that, on the one hand, treat a legitimate dispute as a defense to bad faith and, on the other hand, view a legitimate dispute as a factor in a larger assessment). As its cited authority may imply, this Court views the existence of a legitimate dispute as less legally enigmatic than does the *Tomlinson* court.

More to the point, *Tomlinson*'s cited Tenth Circuit case, *Haberman v. Hartford Insurance Group*, 443 F.3d 1257 (10th Cir. 2006), is distinguishable from the instant suit. *Haberman*, as cited in *Tomlinson*, notes that "a 'legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith' . . . ." 443 F.3d at 1270 (quoting *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 343 (10th Cir. 1995) (applying Oklahoma law)). Specifically, "'a plaintiff may bring a bad faith cause of action even though a legitimate defense to a breach of contract claim exists if the defendant did not actually rely on that defense to deny payment under the policy.'" *Id.* (quoting *Vining v. Enter. Fin. Grp., Inc.*, 148 F.3d 1206, 1214 (10th Cir. 1998)). Here, Defendant's rationale for denying Plaintiff's platelet therapy claims has not changed: Defendant maintains the claims fall outside the Policy's coverage. *See* Doc. 53, at 5, 8–10; Doc. 62, at 4–6; *see also* Doc. 57-14 at 1–2 (denying claims listed under "Blood and Plasma" as "not covered"). More broadly, Plaintiff makes no showing that Defendant's denials were in bad faith; neither does Plaintiff offer "conflicting evidence from which different inferences may be drawn regarding the reasonableness of the insurer's conduct . . . ." *Tomlinson*, 708 F. Supp. 2d at 1295 (internal quotation marks and citation omitted). And to the extent (if any) that the Court considers Plaintiff's Exhibits 8 and 9—the declarations of Debbie Jones Bush and Karen Littrell, to which Defendant objects, as violative of Fed. R. Evid. 403—as alleging nefarious behavior by Defendant in the claims consideration process, these exhibits are irrelevant because they speak only to consideration of Provenge claims, not platelet-related claims. *See* Doc. 57-8–57-9; Doc. 62. As stated above, Plaintiff's bad faith tort relating to Provenge is time-barred. Thus, while the Court finds the applicable Policy language relating to platelet therapies ambiguous, the Court sees nothing before it that raises an inference that Defendant acted in bad faith in reading the Policy narrowly. Or, to paraphrase *Tomlinson*, "[t]he Court has found that the Defendant['s] interpretation of the Policy . . . was too narrow; [but] the trier of fact could [not] find that it was unreasonably so." 708 F. Supp. 2d at 1296.

15

sword—both parties to the insurance contract may rely upon their reasonable expectations.'" (quoting *Max True Plastering Co.*, 912 P.2d at 866)). Plaintiff has failed to make a *prima facie* showing of bad faith, and nothing in the evidence offered by Plaintiff counters Defendant's legitimate and reasonable explanation for denying coverage.[12] *See Yost v. Shelter Mut. Ins. Co.*, No. CIV-14-725-D, 2015 WL 1843538, at *4 (W.D. Okla. Apr. 20, 2015) ("Plaintiff also does not point to any fact from which to infer that Defendant 'did not have a reasonable good faith belief for withholding payment' under the policy." (quoting *McCoy*, 841 P.2d at 572). And "[t]he mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a litigant to submit the issue to a jury for determination. A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct." *Oulds*, 6 F.3d at 1436 (citation omitted). The Court finds that Plaintiff's bad faith theory does not rise above mere allegations; thus, Defendant is entitled to summary judgment on this cause of action.

---

[12] In *Harris*, the Tenth Circuit outlines a burden-shifting framework applied by Oklahoma state courts (most notably in *Manis v. Hartford Fire Insurance Co.*, 1984 OK 25, 681 P.2d 760) to bad faith tort claims. Once the plaintiff makes out a *prima facie* case of bad faith, "the burden shifts to the insurer to show that it had a 'reasonable, actually-relied-upon basis for denying [the insured's claim]'—i.e., that a legitimate dispute existed." *Harris*, 2018 WL 3217191, at *7 (alterations original) (quoting *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1131 (10th Cir. 2012)). If the defendant-insurer can show such a legitimate dispute, "the burden shifts back to the insured to make an additional showing that the denial of coverage was undertaken in bad faith." *Id*. "[T]he minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against said insurer." *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 28, 121 P.3d 1080, 1094. Here, even if this Court viewed Plaintiff as establishing a *prima facie* case of bad faith—which it does not—it is satisfied that Defendant has sufficiently rebutted such a case by showing a legitimate dispute over the Policy's coverage. With the burden shifting back to her, Plaintiff has offered no evidence—made no additional, clear showing—of bad faith as it relates to Mr. Ake's platelet therapies. Thus, a bad faith tort will not lie for these platelet-therapy claims.

# IV. Conclusion

In sum, the Court

- GRANTS summary judgment to Defendant on Plaintiff's bad faith causes of action. Plaintiff's bad faith theory regarding the Provenge claim is time-barred, and Plaintiff fails to make out a *prima facie* case of bad faith regarding the platelet claims.

- DENIES summary judgment to Defendant on Plaintiff's breach of contract causes of action. Given the Policy's ambiguity, Plaintiff may pursue breach of contract theories regarding Defendant's denial of Provenge and platelet claims.

- GRANTS summary judgment to Defendant on the issue of maximum contract damages available for 2013 (finding the maximum available to be $18,986.64).

IT IS SO ORDERED this 14th day of November 2018.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE